*Formatted for Electronic Distribution*                  *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
02/19/2025

_____

**In re:**
    **Blissful Dairy, LLC,**                                            Case # 19-10360
    **Debtor.**                                                     Chapter 12

_____

*Appearances:*

Rebecca A. Rice, Esq.                         Lisa M. Penpraze, Esq.
Cohen & Rice                                    Albany, New York
Shrewsbury, Vermont                     For the United States Trustee
For the Debtor

Jan M. Sensenich, Esq.
Norwich, Vermont
Chapter 12 Trustee

## MEMORANDUM OF DECISION

In conjunction with the Chapter 12 Standing Trustee's Final Report and Account (the "Final Report")[1] filed in this matter, and specifically representations made by the trustee and Debtor's counsel at the hearing on the Final Report, the Court issues the following memorandum to address the status of fees paid to Special Counsel which remain in escrow.[2] No pending motion remains before the Court to provide guidance to Special Counsel on the application of his fees. Debtor filed an Application for Allowance of Compensation by Real Estate Attorney for Debtor (the "Fee Application"),[3] to which the United States Trustee's office objected.[4] Although the Debtor withdrew the Fee Application after the

---

[1] Chapter 12 Standing Trustee's Final Report and Account, ECF 215.
[2] According to the Chapter 12 case Trustee and Debtor's counsel, the legal fees paid to Special Counsel upon the closing of real estate transactions, prior to his retention, remain in Special Counsel's trust account pending Court approval. However, neither Special Counsel nor Debtor have any pending motions before the Court to acquire such approval, contrary to the retention order which states: "The payment of fees or the reimbursement of expenses are subject to Court approval based upon application to the Court and the submission of contemporaneous time records, pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and all applicable local rules of the Court." ECF 211.
[3] Application for Allowance of Compensation by Real Estate Attorney for Debtor, ECF 214.
[4] United States Trustee's Objection to the Application for Allowance of Compensation by Real Estate Attorney for Debtor,

1

Office of the United States Trustee filed its objection, the filing itself raised questions as to violations of the Bankruptcy Code,[5] this Court's order approving retention of Special Counsel and potential improper administration of estate assets. Specifically, Special Counsel retains fees paid despite no Court approval having been sought or achieved in contravention to §§ 327 and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and this Court's Order approving his retention. Accordingly, those fees must be disgorged.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157, 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), this proceeding contains core matters, as it primarily involves proceedings concerning the administration of Debtor's estate, over which this Court has constitutional authority to enter a final judgment.

## FACTUAL BACKGROUND

The relevant underlying facts are not in dispute. The Debtor commenced this case on August 19, 2019, when it filed a voluntary petition under Chapter 12 of the Bankruptcy Code.[6] The Debtor owned two parcels of farmland: (1) 1450 West Road, and (2) 3203 West Road, both in the Town of Bridport, Vermont.[7] The Debtor sold both parcels during the bankruptcy case.

On October 23, 2023, Debtor filed a Motion to Sell Pursuant to § 1206 and VT. LBR 6004-1 related to the 3203 West Road parcel.[8] The Court approved the sale on December 20, 2023,[9] and the sale occurred on or about July 30, 2024.[10]

---

ECF 217.
[5] Unless otherwise indicated, all references to the "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. 101, § *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.
[6] Official Form 201, Voluntary Petition for Non-Individuals Filing for Bankruptcy, ECF 1.
[7] Schedule A/B – Real and Personal Property, ECF 1.
[8] Motion to Sell Pursuant to 11 U.S.C. § 1206 Vt. LBR 6004-1, ECF 145.
[9] Order Approving Sale of Property Pursuant to 11 U.S.C. § 1206, ECF 162.
[10] *See* United States Department of Housing and Urban Development Settlement Statement, Exhibit B, ECF 217.

2

On February 29, 2024, Debtor filed the Motion to Sell Pursuant to § 1206 and Vt. LBR 6004-1 related to the 1450 West Road parcel.[11] Attached to the motion was a Purchase and Sale Contract dated February 23, 2024.[12] The Court approved the sale by order entered April 2, 2024,[13] and the closing occurred on June 3, 2024.[14]

Unbeknownst to the Court at that time, upon closing of the sale of both parcels, $11,950 of sale proceeds were disbursed to Deppman Law, PLC,[15] an entity whose employment had not been approved by the Court.

On September 6, 2024, Debtor filed an application to employ Benjamin Deppman, Esq. of Deppman Law, PLC as real estate counsel for the Debtor (the "Retention Application").[16] The Retention Application requested generally that Attorney Deppman be allowed "to assist Debtor with its real estate transactions" as special counsel ("Special Counsel").[17] It did not specify which transactions he would assist with and was written in such a way to suggest Special Counsel's services would commence in the future. It did not seek nunc pro tunc approval. Further, despite being already paid, the attached affidavit signed by Special Counsel stated he "understand[s] that [his] fees are subject to approval by the Court."[18] The chapter 12 trustee, Jan Sensenich,[19] filed his e-consent to the Retention Application, and thereafter the Court entered an order approving the employment of Special Counsel.[20] At no time did Debtor or the chapter 12 trustee inform the Court that Special Counsel's services had already been completed or $11,950 had already been disbursed to Special Counsel. The Order approving the Retention Application

---

[11] Motion to Sell Pursuant to 11 U.S.C. § 1206 Vt. And LBR 6004-1, ECF 186.
[12] *Id.* at Exhibit A.
[13] Order Approving Sale of Property Pursuant to 11 U.S.C. § 1206, ECF 193.
[14] *See* Real Property Settlement Statement, Exhibit A, ECF 217.
[15] *See* United States Department of Housing and Urban Development Settlement Statement, Exhibit B, ECF 217.
[16] Application to Approve Employment of Special Counsel for Real Estate Transaction, ECF 210.
[17] *Id.* at ¶ 3.
[18] *Id.* at Affidavit of Proposed Attorney.
[19] Jan Sensenich served as the chapter 12 trustee during all relevant times in this case, however, he has recently retired. All references to the chapter 12 trustee in this memorandum opinion are to Jan Sensenich, unless stated otherwise.
[20] Order Approving Employment of Special Counsel, ECF 211.

3

unambiguously provides payment of fees are subject to court approval based upon application to the Court and the submission of contemporaneous time records, pursuant to the Bankruptcy Code, Bankruptcy Rules, and local rules of the Court.[21]

Months later, on December 11, 2024, Debtor filed the Fee Application requesting approval of Special Counsel's fees in the amount of $11,950.[22] The Court immediately observed the Fee Application covered work over the period of October 23, 2023 through July 30, 2024 – significantly before the Retention Application was filed or approved.[23] The same day, the chapter 12 trustee filed the Final Report indicating all distributions in the case had been completed.[24] The Final Report caused further concern because it brought into question whether the fees requested by Special Counsel had been paid without approval.

On January 6, 2025, the United States Trustee filed an objection to the Fee Application, requesting the Court deny it in its entirety.[25] The objection correctly noted: (1) retention of Special Counsel was not approved until long after he began work; (2) nowhere in the Fee Application is retroactive approval addressed in any capacity; and (3) following the chapter 12 trustee's Final Report, no funds are left to satisfy the requested fees.[26] Shortly after the United States Trustee filed its objection, the Debtor withdrew the Fee Application and the United States Trustee then withdrew its objection.

The Court held a hearing on the Final Report on January 17, 2025, and questioned the parties about the circumstances surrounding the filing of the Fee Application and the Final Report. Debtor's counsel, the chapter 12 trustee(s),[27] and a representative of the office of United States Trustee were present. The chapter 12 trustee stated he discovered in September 2024 that no application to employ

---

[21] *Id.*
[22] Application for Allowance of Compensation by Real Estate Attorney for Debtor, ECF 214.
[23] *See id.*
[24] Chapter 12 Standing Trustee's Final Report and Account, ECF 215.
[25] United States Trustee's Objection to the Application for Allowance of Compensation by Real Estate Attorney for Debtor, ECF 217.
[26] *See id.*
[27] Both Jan Sensenich and the successor chapter 12 trustee appeared at the hearing and were available for Court questions.

4

Special Counsel had been filed or approved, even though he had been retained for months.[28] Upon learning this, he encouraged Debtor to file the Retention Application, emphasizing the importance of transparency and disclosure to the Court.[29] Regardless, full disclosure was not achieved, as neither the chapter 12 trustee nor Debtor's counsel requested the Retention Application to be retroactive in nature. Whether intentional or not, the wording of the Retention Application provided the opposite effect by suggesting Special Counsel would perform future services.

When asked if Special Counsel had been paid his requested fees, the parties disclosed he had, and the funds were being held in a client trust account belonging to Special Counsel. Although this information was known to the parties prior to filing the Retention Application, it was not disclosed in either the Retention Application or the Fee Application. The Court questioned whether this payment needed to be reflected in the Final Report, to which the chapter 12 trustee replied it did not – because the proceeds went directly to Special Counsel, they never passed through the chapter 12 trustee's account.[30]

Next, the Court questioned the circumstances surrounding filing of the Fee Application and its withdrawal. The parties acknowledged the merits of the objection and expressed an understanding as to why the Fee Application could not be approved.[31] Debtor's counsel and the chapter 12 trustee contacted secured creditor, Vermont Agricultural Credit Corporation ("VACC"), to discuss alternative options for payment of Special Counsel. By agreement of the parties and pursuant to the terms of the amended chapter 12 plan,[32] if the fees had not gone directly to Special Counsel, they would have gone to VACC – meaning VACC could pay the fees outside of bankruptcy should it choose to do so.[33] Although no representative of VACC was present at the hearing to affirm or deny, Debtor's counsel and the chapter

---

[28] *See* Audio Recording of Hearing, January 17, 2025, 11:26:30 – 11:27:40 a.m.
[29] *Id.*
[30] *See* Audio Recording of Hearing, January 17, 2025, 11:35:00 – 11:35:30 a.m.
[31] *See* Audio Recording of Hearing, January 17, 2025, 11:27:30 – 11:27:50 a.m.

[32] Amended Chapter 12 Plan, ECF184; Motion to Modify Chapter 12 Plan, ECF185; Order Granting Motion to Modify Plan and Confirmation Order, ECF 187.
[33] *See* Audio Recording of Hearing, January 17, 2025, 11:27:50 – 11:30:00 a.m.

5

12 trustee represented VACC consented to this arrangement in the event Special Counsel's fees are disgorged.[34]

Despite agreeing with the merits of the United States Trustee's objection and based upon VACC's alleged consent to pay Special Counsel, Debtor's counsel and the chapter 12 trustee maintained the Court should not disgorge the fees. Their overall position reflects the opinion that because Special Counsel would get paid regardless, disgorging the fees is unnecessary. Put simply, they argue "no harm, no foul."

In response, the Court expressed its understanding of the desire to avoid additional administrative work when the result is the same. It also expressed no objection to however VACC decides to distribute its own funds outside of the bankruptcy system. Nonetheless, the Court noted it cannot ignore the parties' blatant disregard for longstanding bankruptcy procedures in the name of administrative ease. This is especially true considering this kind of indiscretion is not the parties' first in this case,[35] demonstrating a pattern of ignoring the law and asking the Court to look the other way. The Court took the matter under advisement following the hearing.

## DISCUSSION

To receive compensation under § 330 of the Bankruptcy Code, a professional's employment must be approved under § 327.[36] While § 327 does not expressly state employment of professionals must be approved by the Court prior to services being rendered, this requirement is generally read into the statute.[37] Approval prior to services being rendered is important for many reasons – it allows bankruptcy courts an opportunity to evaluate conflicts, general competency, and the general need for services. Additionally, it provides the Court with disclosure necessary to avoid unexpected issues regarding

---

[34] *Id.*
[35] *See* Memorandum of Decision, ECF 169; Sanctions Order, ECF 170.
[36] 11 U.S.C §§ 327 and 330.
[37] *See In re Keren Partnership*, 189 F.3d 86 (2d Cir. 1999); *In re Jarvis*, 53 F.3d 416, 420 (1st Cir. 1995); *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994); *In re F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 106-07 (3d Cir. 1988).

administrative expenses which may arise later in the case.[38]

When a professional is not approved prior to rendering services, the professional risks not receiving payment for their work.[39] Here, Debtor's failure to file the Retention Application at the outset of Special Counsel's employment obviously runs afoul of § 327, and therefore puts his fees at risk. In certain instances – where extraordinary circumstances are shown – bankruptcy courts may grant retroactive or nunc pro tunc approval to professionals.[40] However, neither the Retention Application nor the Fee Application raised the topic and therefore the Court does not consider the issue.

Additional concerns arise based upon the failure of the chapter 12 trustee and Debtor's counsel to disclose the situation to the Court upon the filing of the Retention Application. Under Vermont Rule of Professional Conduct 3.3, attorneys owe a duty of candor to the Court, which includes both initial and continued disclosures during a case.[41] Similarly, as fiduciaries and officers of the court, bankruptcy trustees owe a duty of candor as well.[42] The duty of candor encompasses taking remedial measures when there has been unauthorized conduct, which includes, if necessary, disclosure to the tribunal.[43] When the chapter 12 trustee notified Debtor's counsel she failed to obtain timely approval of Special Counsel's employment, full disclosure of the situation to the Court was the only correct course of action. Although the Retention Application was filed thereafter, it is written in the future tense and failed to mention that Special Counsel had already completed the work and received compensation. Thus, it cannot be

---

[38] *See generally*, Fed. R. Bankr. P. 2014(a).
[39] *See In re Albrecht*, 233 F.3d 1258, 1260-61 (10th Cir. 2000) (Law firm was bound by the bankruptcy court's decision to deny post-facto approval of employment where they never received approval for employment for the period in question); *In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997)( An attorney whose employment has not been approved under § 327 can be required to return compensation for the services provided to the debtor-in-possession); *In re Federated Dep't Stores, Inc.*, 44 F.3d 1310, 1320 (6th Cir. 1995) (To receive compensation governed by § 330(a), professional appointment under § 327(a) as a prerequisite).
[40] *See In re Keren Partnership,* 189 F.3d 86; *In re Jarvis,* 53 F.3d 416; *In re Singson,* 41 F.3d 316; *In re F/S Airlease II, Inc. v. Simon,* 844 F.2d 99.
[41] *See* Vt. R. Prof. Cond. 3.3. Attorneys also owe a general duty of candor to the court as officers of the court, *see Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993); *U.S. v. Shaffer Equipment*, 11 F.3d 450, 457-58 (4th Cir. 1993). These obligations exist in addition to the disclosures required to retain professionals. Fed. R. Bankr. P. 2014.
[42] *In re Jackson,* 388 B.R. 40 (Bankr. W.D.N.Y. 2008).
[43] *See* Vt. R. Prof. Cond. 3.3.

considered to have provided sufficient disclosure.

While the Court does not accuse Debtor's counsel or the chapter 12 trustee of being intentionally deceptive, their actions (or rather inactions) still give rise to a violation of the duty of candor. "The concealment of material information within the attorney's knowledge as effectively misleads a judge as does an overtly false statement"[44] and "the general duty of candor may be thwarted through an attorney's silence."[45] Unfortunately, the omission of material information gave the false impression that Special Counsel had not begun work, let alone been paid. Had the Court been made fully aware of the situation, its decision to allow his employment may have been different – or at least the issue could have been addressed months prior.

Should VACC decide to pay Special Counsel's fees outside the bankruptcy context, then Debtor's counsel and the chapter 12 trustee are correct in asserting that even if the Court disgorges the fees being held in Special Counsel's client trust account, he will be paid all the same. However, to conclude that this renders Court intervention meaningless is short sighted. The Court does not want to deprive Special Counsel of fees – in fact, had the record been sufficiently set forth at the outset, the Court may have had no issue approving Special Counsel's employment when he was first retained. Rather, the Court wishes to reinforce the parties' commitment to maintaining the integrity of the judicial process – because even "the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process."[46] With that in mind, the Court implores the parties to be cognizant of proper procedures moving forward.

---

[44] *In re Wysolmerski,* 2020 VT 54, 212 Vt. 394, 237 A.3d 706, 717 (2020) (quoting *Griffis v. S.S. Kresge Co.,* 150 Cal. App. 3d 491, 197 Cal. Rptr. 771, 777 (1984)).
[45] *Gum v. Dudley*, 202 W.Va. 477, 505 S.E. 2d 391, 400 (1997).
[46] *U.S. v. Shaffer Equipment*, 11 F.3d 450, 457-58 (4th Cir. 1993); *see also In re Grasso*, 568 B.R. 110, 152 (Bankr. E.D. Pa. 2018).

8

**CONCLUSION**

For the reasons set forth above, the Court finds the conduct of Debtor's counsel and the chapter 12 trustee as related to the retention and payment of Special Counsel fell short of what is required of them by sections 327 and 330 of the Bankruptcy Code, this Court's retention order, as well as the Vermont Rules of Professional Conduct. Pursuant to section 105(a) of the Bankruptcy Code, the Court has authority to issue any order necessary to enforce requirements of the Bankruptcy Code or to avoid abuse of process.[47] This extends to enforcement of the applicable Vermont Rules of Professional Conduct.[48] Based upon the totality of the circumstances, the Court finds it appropriate and sufficient to require compliance with applicable law. Therefore, the Court shall issue an order directing Special Counsel to disgorge the funds being held in his client trust account in the amount of $11,950 to be paid to VACC as Debtor's primary secured creditor.

This memorandum decision constitutes the Court's findings of fact and conclusions of law. A separate order will issue.

February 19, 2025  
Burlington, Vermont

Heather Z. Cooper  
United States Bankruptcy Judge

---

[47] 11 U.S.C. § 105(a).
[48] *See In re Schatz*, 601 B.R. 864 (Bankr. D. Conn., 2019) (Disgorgement ordered for violation of rules of professional conduct); *In re Moore*, 532 B.R. 614, 629 (Bankr. W.D. Pa. 2015) ("The Court's authority to enforce professional conduct is commensurate with its supervisory responsibilities."); *In re McDermitt*, 2006 WL 1582390, at *4 (Bkrtcy.D.Vt. 2006) ("If an attorney practicing before this Court fails to comply with the VRPC, and the totality of circumstances demonstrate that discipline is warranted, this Court has the duty under the District and Bankruptcy Local Rules to impose the appropriate sanction pursuant to 11 U.S.C. § 105(a)").

9